IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JASON S. LINSMEYER,

                Petitioner,              OPINION AND ORDER

v.

                                                                           19-cv-396-wmc

JONATHAN BUSSIE,

                Respondent.[1]

---

Petitioner Jason Linsmeyer has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 that challenges his 2014 conviction by a jury for repeated sexual assault of the same child. Specifically, he asserts that the Wisconsin Court of Appeals should have held an evidentiary hearing to assess whether the jurors improperly seeing his booking photo at trial impacted their verdict against him.[2] Linsmeyer further argues that the Court of Appeals erred in finding that the booking photo did *not* affect the jury's guilty verdict. The petition will be denied because any error by the Wisconsin Court of Appeals was harmless, even if inconsistent with clearly established federal law.

FACTUAL BACKGROUND

In 2011, Linsmeyer was charged with one count of repeated sexual assault of the same child in violation of Wis. Stat. § 948.025(1)(b). (Dkt. #14-1, at 1.) At trial, the victim, Linsmeyer's stepdaughter, testified that Linsmeyer looked different from the last time she had seen him because his hair was shorter, and he was clean-shaven. (Dkt.

---

[1] The court has updated the caption to reflect that Linsmeyer is now housed at Oregon Correctional Center, where Jonathan Bussie is the Superintendent.

[2] In Linsmeyer's counseled brief in support of his petition, he noted that, other than the booking photo issue, he abandoned all issues raised in his *pro se* habeas petition. (Dkt. #28, at 4.)

#14-11, at 9.) At that point, the state attempted to introduce a photo of Linsmeyer taken on the day of his arrest. (*Id.* at 9-10.) After initially suggesting that the state crop the photo, so the jury would not see Linsmeyer's "orange shirt," the trial court ultimately excluded the photo, noting outside the presence of the jury that Linsmeyer "look[ed] bad" and his identification was not at issue in the case. (*Id.* at 9-17; Dkt. #14-13, at 4-5.)

The victim testified that Linsmeyer sexually assaulted her between the ages of 6 and 12. (Dkt. #14-11, at 23, 52.) Early on, the victim testified that Linsmeyer would send her to her room under the guise of punishment, then talk with her about what she had done wrong, pulling her shirt up and pants and underwear down before sexually touching her thighs, vagina, and chest. (Dkt. #14-11, at 23, 25-31, 37-38.) The victim also testified that Linsmeyer digitally penetrated her several times. (*Id.* at 42-44, 46.) The victim further wrote in her diary, "Dear Diary, I hate my stepdad. He raped me again. I wish he would just leave me alone." (*Id.* at 76.) In a later diary entry, she wrote, "[Linsmeyer] hasn't raped me in a while which is good, too." (*Id.* at 78.)

In his defense, Linsmeyer and his wife (the victim's mother) both testified that the victim was "not a truthful person." (Dkt. #14-13, at 21, 111.) Ultimately, however, the jury convicted Linsmeyer, and the circuit court sentenced him to 13 years' imprisonment to be followed by 7 years of extended supervision. (Dkt #14-14, at 100; Dkt. #14-15, at 33.)

Linsmeyer appealed. However, his appellate counsel, Thomas Erickson, eventually filed a no-merit report in May 2016 after hiring a private investigator to look into any possible jury impropriety. (Dkt. #14-2, at 41.) In particular, Erickson represented that

the private investigator had found no evidence that the jurors were aware of defendant's previous acquittal of child sexual assault charges in Waukesha County. (*Id.*) In his response to counsel's no-merit report, Linsmeyer asserted that one juror, P.P., indicated to the investigator that she had seen a photo of Linsmeyer before trial. (Dkt. #14-3, at 12-13.) As to that juror, the investigator had specifically relayed to Erickson in an email that P.P.

> stated that she rendered the verdict that she did because of victim's testimony. She stated that the victim seemed credible and she simply had too many details of the assaults and she found her testimony to be pretty convincing. She stated that the defendant seemed like a control freak and the jury saw older photos of the defendant and she was bothered by his appearance. She stated that his appearance mattered to her.

(Dkt. #27, at 4-5.)

From this statement, Linsmeyer *surmises* that P.P. must have seen his booking photo, since he was clean-cut in the only photo of him available online, although he does *not* allege that the booking photo was intentionally shown to the jurors at trial. (Dkt. #14-3, at 13.) In response, Erickson then submitted a supplemental, no-merit report, asserting that:

> P.P. did not state to the investigator that she saw the Defendant's picture before trial but that the jury saw photos of the Defendant. Furthermore, she stated the victim seemed credible because of her detailed descriptions of the assault.

(Dkt. #14-4, at 3.)

Ultimately, the Wisconsin Court of Appeals affirmed Linsmeyer's conviction and sentence, concluding that any further appellate proceedings would be "wholly frivolous" within the meaning of *Anders v. California*, 386 U.S. 738 (1967), and Wis. Stat. § 809.32. (Dkt. #14-5, at 15.) In determining that there was no merit to Linsmeyer's jury

3

impropriety claim in particular, the court first noted that P.P. had told the investigator that she had "rendered the verdict she did because of [the] victim's testimony," adding that she had found the victim's testimony "to be pretty convincing" because she "simply had too many details of the assaults." (*Id.* at 12.)  While acknowledging that P.P. told the investigator that "the jury saw older photos of the defendant and she was bothered by his appearance," and that "his appearance mattered to her," the Court of Appeals further explained that P.P. had stated that she "absolutely" did not look Linsmeyer up. (*Id.*)

In rejecting Linsmeyer's position, the Court of Appeals concluded,

> As Linsmeyer asserts, it appears that the photograph P.P. states that the jury saw was the photograph that the State attempted to introduce into evidence while questioning the victim, and which the circuit court excluded from evidence. Ultimately, though, P.P. indicated that she reached the verdict based on her assessment of the victim's credibility. While P.P. stated that Linsmeyer's appearance bothered her and that his appearance mattered to her, nothing in her statement indicates that her viewing the photograph that was then excluded from evidence on the defense's objection affected her verdict. We note that the victim testified that Linsmeyer looked different at trial than when she last saw him in that, at trial, he had shorter hair and was clean-shaven. Thus, Linsmeyer's difference in appearance was already revealed to the jury.

(*Id.* at 13.)  The Wisconsin Supreme Court denied Linsmeyer's petition for review of that decision in February 2018. (Dkt. #14-8.)

OPINION

Habeas relief is available "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant relief on a writ of habeas corpus from a state court's adjudication of a claim on the merits only if that decision was:  (1) contrary to, or involved an unreasonable

4

application of clearly established Federal law as determined by the Supreme Court of the United States; *or* (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2554(d). "Petitioners must also clear a second hurdle for relief." *Jewell v. Boughton*, 90 F.4th 1199, 1203 (7th Cir. 2024). "[A] petitioner who prevails under AEDPA must still . . . persuade a federal habeas court that 'law and justice require' relief." *Brown v. Davenport*, 596 U.S. 118, 134 (2022) (quoting 28 U.S.C. § 2243). To do so, a petitioner must show that the trial court's error "had a substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation marks omitted).

Here, the court understands petitioner to argue that his right to be tried by a fair and impartial jury was violated when juror P.P. (and potentially other jurors) considered his booking photo. While a defendant's right to be tried by a fair and impartial jury is guaranteed by the Fourth Amendment, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). Moreover, the state trial court did not consider this claim because petitioner raised it for the first time before the Wisconsin Court of Appeals. In deciding that there was no merit to petitioner's appeal, the Wisconsin Court of Appeals focused on whether P.P. and other jurors seeing petitioner's booking photo was prejudicial.

Now, seeking habeas relief from this court, petitioner appears to argue that the Wisconsin Court of Appeals erroneously determined that the jury seeing the booking photo was harmless by: (1) not holding an evidentiary hearing; (2) considering juror P.P.'s

5

statements about how she reached her verdict in violation of *Mattox v. United States*, 146 U.S. 140 (1892); and (3) determining that the photo had no effect on the jury's verdict.[3] Although these asserted errors are not apparent grounds for habeas relief under § 2254(d), the court will only briefly address them because petitioner has not shown prejudice regardless.

To begin, the Wisconsin Court of Appeals arguably acted contrary to federal law by not remanding the case to the state trial court for an evidentiary hearing based on the jury potentially seeing petitioner's booking photo. *See Tanner v. United States*, 483 U.S. 107, 120 (1987) (recognizing Supreme Court's "holdings requiring an evidentiary hearing where extrinsic influence or relationships have tainted the deliberations"); *see also Smith v. Phillips*, 455 U.S. 209, 217 (1982) (court can determine effect of "prejudicial occurrences" at a hearing). Moreover, petitioner's strongest argument is that the Wisconsin Court of Appeals' decision was contrary to *Mattox*. In *Mattox*, the U.S. Supreme Court held that a juror "may testify to any facts bearing upon the question of the existence of any extraneous influence, *although not as to how far that influence operated upon his mind*." 146 U.S. at 149 (emphasis added). In this case, unlike *Mattox*, there was *no* juror testimony. Rather, the record was developed only before the Wisconsin Court of Appeals, and the court is left with summaries of the jurors' statements as recorded by a private investigator. (Dkt. #27.) Still, contrary to *Mattox*'s holding, the Wisconsin Court of Appeals appears to have at least

---

[3] Petitioner also asserts that the Wisconsin Court of Appeals improperly applied *Anders*, but *Anders* did not establish a specific framework that the Wisconsin Court of Appeals had to follow. *Smith v. Robbins*, 528 U.S. 259, 273 (2000) (explaining that the U.S. Supreme Court "did not say that [its] *Anders* procedure was the only prophylactic framework that could adequately vindicate [the constitutional right to appellate counsel]").

6

considered juror P.P.'s internal deliberative process before concluding that to the extent the jury saw any excluded booking photo, its impact was harmless. (Dkt. #14-5, at 13 ("Ultimately, though, P.P. indicated that she reached the verdict based on her assessment of the victim's credibility.").)[4]

Finally, in considering juror P.P.'s (summarized) statements of her internal deliberative process, the Court of Appeals arguably made an unreasonable factual determination by failing to credit P.P.'s statement fully that petitioner's appearance "mattered" to her and ignoring that the booking photo could have prejudiced *other* jurors.[5] In any event, the court need not definitively resolve whether the Wisconsin Court of Appeals erred, because petitioner has not established prejudice or shown that he was harmed by the alleged error. *See Hall v. Zenk*, 692 F.3d 793, 796, 805 (7th Cir. 2012) (applying harmless-error standard when jury heard extraneous information).

To show that a constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict," a petitioner must establish that a trial error of constitutional magnitude resulted in "actual prejudice," *Brecht*, 507 U.S. at 637, and "[t]here must be more than *a reasonable possibility* that the error was harmful." *Davis v. Ayala*, 576 U.S. 257, 268 (2015) (quotation marks omitted and emphasis added). *Brecht*'s

---

[4] The Second Circuit has concluded that "a showing that the state court decision was an unreasonable application of the *Mattox* rule is alone insufficient to support the granting of habeas relief" because: "*Mattox*'s holding was derived from longstanding common law"; and "[s]tate violations of federal common law rules are generally not cognizable in federal habeas proceedings." *Loliscio v. Goord*, 263 F.3d 178, 188 n.5 (2d Cir. 2001).

[5] Although P.P. stated that "the jury" had seen older photos of petitioner, no other jurors mentioned the booking photo in their interview with petitioner's private investigator. (Dkt. #27.)

7

harmless error standard is satisfied when a reviewing judge "is in grave doubt about whether" the error is harmless -- that is, when "the matter is so evenly balanced that [a judge] feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995). Put differently, when a federal court is in equipoise as to whether an error was actually prejudicial, it must "treat the error, not as if it were harmless, but as if it affected the verdict (*i.e.*, as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')." *Id.* at 435.

On this record, while the trial court acknowledged that petitioner "look[ed] bad" in the booking photo, petitioner has *not* established prejudice simply by showing that the jury's verdict may have been tainted by the photo. Importantly, as the Wisconsin Court of Appeals pointed out, the jury already knew about petitioner's changed appearance, as the victim testified to his newly trimmed hair and shaved beard. (Dkt. #14-5, at 13.) *See Henry v. Ryan*, 720 F.3d 1073, 1086 (9th Cir. 2013) ("extraneous information is less likely to be prejudicial when . . . it merely confirmed what any reasonable juror already knew") (quotation marks omitted). Similarly, while petitioner asserts that he was prejudiced by the booking photo because it made him less credible, the photograph had only a tenuous connection to the material issues of his case, especially since petitioner's actual identity was not a contested issue. *See State v. Eison*, 194 Wis. 2d 160, 179, 533 N.W.2d 738 (1995) (listing factors for courts to consider in determining whether extraneous information had a prejudicial effect, including "connection between the extraneous information and a material issue in the case").

Moreover, the booking photo is certainly less prejudicial than other extraneous information that courts have found prejudicial. For example, in *Mattox* itself, the U.S. Supreme Court concluded that the trial court erred in refusing to consider juror affidavits stating that the bailiff had remarked that the victim was the third person the defendant had killed, as well as that the jury had considered a newspaper article stating the evidence against defendant was very strong, he had been tried for his life once before, and he would be lucky not to be convicted. 146 U.S. at 141-43, 150-52. Next, in *Hall*, the Seventh Circuit determined that extraneous information considered by at least some jurors that another juror's son was incarcerated at the same facility as the defendant had initially believed the defendant to be innocent, but "no longer believed [the defendant] to be innocent," could not be deemed harmless since it was "highly prejudicial" and went to "the ultimate question in his criminal case." 692 F.3d at 796, 807. In *United States v. Berry*, 92 F.3d 597 (7th Cir. 1996), the Seventh Circuit affirmed the district court's grant of a new trial in a criminal case because jurors were exposed to an unauthenticated transcript identifying defendant as a speaker in a conversation about one of the drug transactions alleged in the indictment. *Id*. at 598-99, 601-02. Finally, in *Santos v. Williams*, No. 15 C 5325, 2016 WL 7077104 (N.D. Ill. Dec. 2, 2016), the court concluded that a state trial court should have held an evidentiary hearing to consider the nature of a trial judge's *ex parte* communication with the jury, the circumstances under which the trial court provided the jury with a dictionary, and how the jury used the dictionary. *Id*. at *8.

Petitioner's booking photo in this case is simply not of the same caliber as the extraneous information considered by any of those decisions. Specifically, the photo did

9

not suggest to the jury that petitioner had previously engaged in similar conduct or even bear on an element of the crime charged. Even the dictionary provided to the *Santos* jury could have been used to define terms relevant to Santos' guilt. In contrast, while there may be a *reasonable possibility* of prejudice when P.P. said that she was "bothered" by petitioner's appearance and appearance mattered to her, that alone is not enough to cause grave doubt about this possible error being harmless when the photo otherwise had such limited bearing on material issues at trial. Further, to the extent that the photo suggested to the jury that petitioner had been arrested, even that fact would not have been a revelation to the jury given that he was by then on trial for a criminal matter.

Finally, as the Wisconsin Court of Appeals found (dkt. #14-5, at 2-3), the evidence presented at trial against petitioner was strong, if not overwhelming, including the victim providing details about petitioner initially sexually touching her under the guise of punishment, then digitally penetrating her as she grew older, and the victim's apparently contemporaneous diary entries indicating that defendant had raped her. *See Whitman v. Bartow*, 434 F.3d 968, 971 (7th Cir. 2006) ("trial errors are often found harmless where the record is replete with overwhelming evidence of the defendant's guilt"). For all the reasons identified above, the court concludes that petitioner has not shown that he was actually prejudiced by the jury considering the booking photo, so the court will deny his § 2254 petition.

The remaining question on habeas review is whether to grant petitioner a certificate of appealability. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further." *Miller El v. Cockrell*, 537 U.S. 322, 336 (2003) (quotation marks omitted). For the reasons discussed above, petitioner has not made such a showing, and no certificate of appealability will be issued.

ORDER

IT IS ORDERED THAT:

1) Petitioner Jason Linsmeyer's petition for a writ of habeas corpus under 28 U.S.C. § 2554 (Dkt. #1) is DENIED.

2) No certificate of appealability shall issue.

Entered this 9th day of April, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge